In the Matter of the PATERNITY
OF V.M., A.M., AND V.B.,

Victor Benavides, Appellant–
Respondent,

v.

Phillip Moore, Appellee–Petitioner.

No. 06A04–0303–JV–117.

Court of Appeals of Indiana.

June 27, 2003.

---

Deborah K. Smith, Martin & Smith, Thorntown, IN, For Appellant.

Nancy L. Cross, Monty K. Woolsey, Miroff, Cross & Woolsey, Indianapolis, IN, For Appellee.

## OPINION

KIRSCH, Judge.

Victor Benavides appeals the trial court's decision denying his request for modification of permanent custody of his two minor children, V.M. and V.B.,[1] which had been previously placed with the children's maternal grandfather Phillip Moore. Benavides raises two issues for review, which we consolidate and rephrase as: whether the trial court erred in denying his petition for modification of custody and continuing permanent custody with Moore on the basis that doing so was in the best interests of the children.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Benavides is the biological father of V.M., age 9, and V.B., age 7, and although Benavides assumed a parental role of A.M., age 11, he is not her biological father or her stepfather. All three children were born out of wedlock. Approximately seven years ago, the children's mother agreed to relinquish the care and custody of the children to her father. She has never expressed a real interest in the children and has had very little contact with them. She currently lives in Arizona and did not attend the custody hearing. Because of his lack of fitness and willingness to parent the children, due in large part to his past drinking problems and criminal behavior, Benavides also voluntarily relinquished custody of the children to Moore. It is undisputed that neither parent could then provide for the needs of the children.

Benavides is now married and has a biological child with his wife and two step-children. Until two or three years ago, Benavides had only sporadic contact with V.M. and V.B. Since then, he quit drinking and using drugs, attends church regularly, has consistent visitation with the children on alternate weekends, and pays child support to Moore.

In November 2001, Moore filed a petition with the trial court to make the temporary custody order a permanent order. Benavides did not dispute this at the time. After Moore and his wife moved the three children to Pittsboro from Lebanon, where Benavides resides, Benavides filed a petition for modification of custody of the children. A hearing was held on December 27, 2002, and the trial court denied the modification of custody on January 21, 2003, but awarded liberal visitation with all three children. Benavides appeals from this order.

## DISCUSSION AND DECISION

■ Indiana law has traditionally recognized that "natural parents are entitled to

---

1. A.M. is not a party to this appeal concerning custody as the child is not the biological or adopted child of Benavides. Despite Benavides's argument to the contrary that "no natural parent as [sic] asserted a custodial demand," *Appellant's Brief* at 8, we agree with the trial court that it had "very little authority, if any, to place custody" of the child with Benavides because he was not the child's biological father. *Appellant's Appendix* at 8.

the custody of their minor children, except when they are unsuitable persons to be entrusted with their care, control, and education." *Gilmore v. Kitson*, 165 Ind. 402, 406, 74 N.E. 1083, 1084 (1905). We observe that a child custody determination falls squarely within the sound discretion of the trial court and such determination will not be disturbed on appeal absent an abuse of discretion. *Matter of Guardianship of R.B.*, 619 N.E.2d 952, 955 (Ind.Ct. App.1993). We are reluctant to reverse a decision concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.*

Because appellate courts defer to the trial court's discretion, we disturb the judgment only where there is no evidence supporting the findings or where the findings fail to support the judgment. *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind.2002). Because we may not reweigh the evidence, but instead may consider only the evidence favorable to the trial court's order, the "challenger thus labors under a heavy burden and must show that the trial court's findings are clearly erroneous." *Id.* at 288. We further note that upon review of a judgment requiring proof by clear and convincing evidence, appellate courts may not impose their views as to whether the evidence is clear and convincing "but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing the evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence." *Id.*

Recently, in *B.H.*, our supreme court articulated the following rule with respect to the standard to be applied in custody disputes between a natural parent and a third party:

Despite the differences among Indiana's appellate court decisions confronting child placement disputes between natural parents and other persons, most of the cases generally recognize the important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent. This presumption does provide a measure of protection for the rights of the natural parent, but, more importantly, it embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best interests. To resolve the dispute in the caselaw regarding the nature and quantum of evidence required to overcome this presumption, we hold that, before placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because "a third party could provide the better things in life for the child." *Hendrickson [v. Binkley]*, 161 Ind.App. [388,] 396, 316 N.E.2d [376,] 381 [ (1974), *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d. 98 (1975) ]. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. *The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and*

*strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review.* A generalized finding that a placement other than with the natural parent is in a child's best interests, however, will not be adequate to support such determination, and detailed and specific findings are required. [*In re Marriage of*] *Huber*, 723 N.E.2d [973,] 976 [ (Ind.Ct.App.2000) ].

*Id.* at 287 (emphasis added).

██ Applying this rule to the present case, it is presumed that it was in the best interest of the children to be placed in the custody of their natural father. The Moores had the burden to overcome that presumption. Here, the trial court concluded that staying with the Moores was in the children's best interests, and it articulated specific reasons for its conclusion. In pertinent part, the trial court entered the following order maintaining custody of the children with the Moores:

19. The issues before the Court are not just stability and consistency or whether or not Mr. Benavides is capable of caring for the children. Of course, he is now capable of caring for the children. He has made dramatic changes, for the better, to his life. He and [his wife] are making a very good life together. The issues before the court are much more complicated.

20. The court has very carefully considered the in-camera interviews, the testimony at the hearing and the current case law.

. . . .

23. Despite the fact the Mr. Benavides has significantly changed his life for the better and despite the fact that the Court commends Mr. Benavides and expresses its satisfaction with [him, his wife,] their family, home and church involvement, Mr. Benavides'[s] Petition to Modify Custody is DENIED. In the future, the circumstances may change and a different order appropriate, but not at this time.

24. Mr. Benavides previously consented to the present arrangement. The children are doing well in their new school. They like their new school. Mr. Benavides already has a household with a young daughter and two step-sons. [The other three children] are in a home where they are the focal point of Mr. and Mrs. Moore's affection and attention. The children have a new home, a larger home and more privacy. The children['s] mental, emotional, and financial needs are all being met.

25. The Court is exercising its sound discretion in this area to do what is best and what is right for the children at the present time. This is not an easy, flippant decision. The Court does not wish to separate the children as such a decision would (not) [sic] be advantageous to the children and certainly not in their best interest, any of them.

26. The Court understands that Mr. Benavides disparately [sic] wants to fulfill his responsibilities as a parent. However, he already has his hands full and Mr. and Mrs. Moore have been doing a very good job in his absences. The primary concern then becomes the children.

27. Thus, the best interests of the three children are the paramount consideration of this Court. Mr. Benavides consented to the present arrangement.

Nothing has changed to such a degree to warrant a modification of custody.

28. Upon careful consideration of the testimony, including the in-camera interviews, the Court further concludes that the relationship and affections between Mr. Moore and the children have become so interwoven that to sever them, by modifying custody (and therefore removing the children from the only home they have known for many years and uprooting them from their new school and friends) would seriously mar and endanger the future happiness of the children. The mental and emotional well being of the children must be considered and giving great deference by everyone.

29. The best interests of each of the children demand that they remain in the custody of Mr. Moore. Clear and convincing evidence has been provided to the Court that this is what is best and right for the children. There is a substantial and significant benefit to the children by remaining in the custody of Mr. Moore.

*Appellant's Appendix* at 8–9.

Our review of the record before us on appeal supports the conclusion that the presumption in favor of Benavides having custody of the children was rebutted by evidence of Benavides' past unfitness, voluntary abandonment of the children, long acquiescence of the Moore's custody, and other factors that would rebut the strong presumption in favor of Benavides. While sympathetic to the relationship that has developed between the children and Benavides, we acknowledge the upheaval that a change in custody in this case would undoubtedly involve. The trial court's properly considered whether the presumption in favor of Benavides having custody had been rebutted and concluded that the children's best interests were served by continued placement with the maternal grandparents.

Affirmed.

MATTINGLY–MAY, J., and MATHIAS, J., concur.